RENDERED: MARCH 29, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0565-MR

MATTHEW LEE MERGENS                                APPELLANT

            APPEAL FROM MCCRACKEN CIRCUIT COURT
v.         HONORABLE DEANNA WISE HENSCHEL, JUDGE
               ACTION NO. 22-CI-00533

EMILY GRACE CARTWRIGHT                           APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND CALDWELL, JUDGES.

THOMPSON, CHIEF JUDGE: Matthew Lee Mergens ("Appellant") appeals from an amended supplemental decree and final hearing order of the McCracken Circuit Court in a dissolution of marriage proceeding filed by Emily Grace Cartwright ("Appellee"). Appellant argues that the circuit court erred in restricting his visitation with the parties' minor child ("Child"); in granting Appellee the right to

claim Child as a dependent for tax purposes; and, in awarding an attorney fee in favor of Appellee. After careful review, we affirm the order on appeal.

## FACTS AND PROCEDURAL HISTORY

Appellant and Appellee were married on May 25, 2019. The marriage produced a child who was born in 2021, and the parties were divorced by a decree of dissolution entered on October 14, 2022.

During Appellee's pregnancy, Appellant admitted himself to Mercy Health Lourdes psychiatric unit for treatment of suicidal ideation. He was diagnosed with a mood disorder and a cannabis use disorder, prescribed with psychiatric medications and directed to follow up with mental health treatment. Appellant acknowledged having suicidal thoughts and anger issues. Thereafter, Appellant began mental health treatment at Four Rivers Behavioral Health. He was referred to six months of counseling which he did not complete.

During the parties' separation, but prior to dissolution, Appellant moved to Nashville, Tennessee for employment. Appellee was Child's sole caregiver. She testified that she was concerned about Appellant's ability to provide care for Child during Child's visits to Nashville, and that Appellant terminated three of five visits early. Evidence was adduced that Appellant did not pursue additional visits with Child during the pendency of the proceedings.

In adjudicating the parties' custody and visitation issues, the circuit court determined that it was in Child's best interest for the parties to have joint custody, with Appellee designated as the primary residential custodian. The court found that the presumption of equal timesharing was overcome by the inconsistent and minimal contact that Appellant had with Child. Based on the statutory factors, and due to Appellant's failure to follow through with his mental health treatment and failure to pursue meaningful and consistent contact with Child, the circuit court ordered a graduated visitation plan spanning 18 months.

For the first six months, the court granted Appellant seven hours of daytime visitation on alternating Saturdays, in addition to daily video calls of five minutes. After six months, and upon Appellant's completion of counseling, Appellant's visitation with Child was increased to overnight visits in Kentucky on alternate Saturdays. After an additional six months, the overnight visits would be allowed in Tennessee. Finally, after another six months, if Appellant remained consistent with his visitation, he would be granted more liberal visitation per the McCracken County Family Court Standard Visitation Guidelines.

The court went on to find that because Child lived primarily with Appellee, she would be allowed to utilize Child as a dependent on her income taxes. The court determined that such a designation also benefitted Child. And finally, the circuit court awarded Appellee attorney fees in the amount of

$5,000.00. It based this award on the disparity in the parties' incomes. This appeal followed.

## ARGUMENTS AND ANALYSIS

Appellant first argues that the McCracken Circuit Court erred in restricting his visitation without making any findings that Appellant would endanger seriously Child's physical, mental, moral, or emotional health as required by Kentucky Revised Statutes ("KRS") 403.320. He asserts that Kentucky law creates a presumption that visitation is in a child's best interest and the court may not restrict visitation without such findings. Appellant argues that the circuit court failed to properly cite or consider KRS 403.320, and that the case law holds that a visitation schedule should be crafted to provide the child with as much time with both parents as possible. Appellant contends that the circuit court's decree is not consistent with the principles set out in the statutory law and case law. He seeks an opinion reversing the amended supplemental decree and final hearing order on appeal, and remanding the matter for proceedings consistent with the law of the Commonwealth.

KRS 403.320 addresses visitation and states in relevant part:

(1) A parent not granted custody of the child and not awarded shared parenting time under the presumption specified in KRS 403.270(2), 403.280(2), or 403.340(5) is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or

-4-

emotional health. Upon request of either party, the court shall issue orders which are specific as to the frequency, timing, duration, conditions, and method of scheduling visitation and which reflect the development age of the child.

(2) If domestic violence and abuse, as defined in KRS 403.720, has been alleged, the court shall, after a hearing, determine the visitation arrangement, if any, which would not endanger seriously the child's or the custodial parent's physical, mental, or emotional health.

(3) The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health.

Thus, Appellant is entitled to "reasonable visitation" unless the court finds, after a hearing, "that visitation would endanger seriously the child's physical, mental, moral, or emotional health." *Id.* The first question for our consideration, then, is whether Appellant received reasonable visitation. If that question is answered in the affirmative, then no subsequent finding of serious endangerment was required.

"What constitutes 'reasonable visitation' is a matter which must be decided based upon the circumstances of each parent and the children, rather than any set formula." *Drury v. Drury*, 32 S.W.3d 521, 524 (Ky. App. 2000). Trial courts "should not give undue weight to the terms of a 'standard' visitation order"

and "must make a *de novo* determination of what amount of visitation is appropriate[.]" *Id*. at 524-25. "[T]he trial court has considerable discretion" in adjudicating child visitation. *Id.* at 525.

After considering the issues presented, the McCracken Circuit Court ordered an incremental visitation plan which increased over time in concert with Appellant's successful visitation and his ongoing participation in counseling. As noted above, it began with Saturday daytime visitation twice a month and daily video calls, increasing to overnight visits in Kentucky, then overnight visits in Tennessee, and culminating in visitation per the McCracken County Family Court Standard Visitation Guidelines. This graduated visitation plan was not arbitrarily entered into, but was reasonably fashioned to balance the various considerations including Appellant's statutory right to visitation, Child's best interest, and Appellant's personal history. The circuit court exercised its considerable discretion and granted visitation based on all relevant factors rather than any set formula. We conclude that the McCracken Circuit Court granted reasonable visitation to Appellee per KRS 403.320 and *Drury*. As such, no finding of serious endangerment was required.

Appellant next argues that the circuit court erred in permitting Appellee to claim the child tax credit per Internal Revenue Service ("IRS") regulations. He asserts that the credit can reduce a taxpayer's bill on a dollar-for-

dollar basis up to $2,000 per child. Appellant argues that because Appellee had no income at the time of the decree, he should have been awarded the tax credit.[1]

This argument is not preserved for appellate review per Kentucky Rules of Appellate Procedure ("RAP") 32(A)(4); therefore, we will review it for manifest injustice only. *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citing *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)). Manifest injustice requires a showing that a different result was probable, or that the error in the proceeding was of such magnitude as to be "shocking or jurisprudentially intolerable." *Martin v. Commonwealth*, 207 S.W.3d 1, 3-4 (Ky. 2006).

In support of his argument, Appellant directs our attention to various provisions of the IRS code in support of his claim that Appellee, who was a college student at the time of dissolution, could not claim Child as a dependent on her taxes because she had no income. He also contends that the IRS code allows him to claim Child as a dependent even though he is not the custodial parent. While these claims may be true, the McCracken Circuit Court's award of the child tax credit in favor of Appellee was clearly prospective in nature. The court found that Appellee was in her last semester of school at the time of the decree and anticipated employment as a teacher in the 2023-24 school year. The court noted

---

[1] The circuit court did not use the phrase "child tax credit" nor reference the Internal Revenue Service Code. Rather, the supplemental decree granted to Appellee "the right to claim the minor child for tax purposes each year[.]"

that Appellee would be allowed to claim Child on her taxes "each year[.]" Thus, even though Appellant correctly asserts that Appellee had no income at the time of the decree, the award of the credit in favor of Appellee was made in anticipation of her earning income beginning in 2023. Further, while Appellant has set forth the reasons that he would benefit from the credit, he has not cited any Kentucky statute or case law demonstrating that the award in favor of Appellee was erroneous. We find no manifest injustice on this issue and thus no error.

Lastly, Appellant argues that the circuit court erred in awarding $5,000.00 in attorney fees to Appellee. He maintains that it was improper to make an award of attorney fees based on the financial disparity of the parties. He also contends that the court erred in failing to consider such factors as the type and amount of the services rendered, the time and trouble involved, and other considerations as set out in *Boden v. Boden*, 268 S.W.2d 632 (Ky. 1954). He argues that without an itemized reckoning of the work performed by Appellee's counsel, it was impossible to determine if the fees were reasonable and appropriate. In response, Appellee notes that Appellant did not raise this issue below, and failed to provide a statement at the beginning of the written argument, per RAP 32(A)(4), showing if and how the issue was preserved. Lack of preservation aside, Appellee argues that the award of attorney fees fell within the sound discretion of the circuit court and was proper.

-8-

KRS 403.220 states:

> The Court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

"The amount of an award of attorney's fees is committed to the sound discretion of the trial court[.]" *Gentry v. Gentry*, 798 S.W.2d 928, 938 (Ky. 1990). In assessing attorney fees, a finding of financial disparity is sufficient. Nothing more is required. *Id*. at 937.

The McCracken Circuit Court found a financial disparity between the parties, as Appellant was then earning about $95,000.00 per year and Appellee was an unemployed student. This finding is supported by the record. The award of attorney fees in favor of Appellee did not constitute an abuse of discretion and we find no manifest injustice on this issue.

## CONCLUSION

For these reasons, we affirm the amended supplemental decree and final hearing order of the McCracken Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANT:                    BRIEF FOR APPELLEE:

Bard K. Brian                            Tiffany Gabehart Poindexter
Paducah, Kentucky                        Paducah, Kentucky